**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CHRISTOPHER JOHN, on behalf of himself and others similarly situated,** **Plaintiff,** | **CIVIL ACTION** |
| **v.** | |
| **AMERICAN AIRLINES INC.,** **Defendant.** | **NO.  25-6698** |

## <u>MEMORANDUM</u>

**HODGE, J.**                                                                                    **June 5, 2026**

Before the Court is Defendant American Airlines Inc.'s ("American") Motion to Dismiss

the Amended Complaint filed by Christopher John ("John") (ECF No. 17 (the "Motion")), the

opposition thereto (ECF No. 19), and reply in support (ECF No. 20). For the following reasons,

the Motion is granted.

## I.      BACKGROUND[1]

### A.      Factual Background

Taking the allegations in John's Amended Complaint as true, the facts are as follows.[2]

Defendant provides air transportation services worldwide, including at the Philadelphia

International Airport ("PHL"). (ECF No. 13 ¶¶ 5–6.) Since about March 2014, American has

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

[2] With its Motion, American attaches a declaration and two exhibits containing both collective bargaining agreements that applied to John. The Court cannot consider the declaration in connection with a Rule 12(b)(6) motion. See *Davis v. Wells Fargo*, 824 F.3d 333, 351 (3d Cir. 2016). However, the Court can consider Exhibits A and B without converting the 12(b)(6) motion into one for summary judgment because they are the collective bargaining agreements on which the Amended Complaint is based. See *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). John does not challenge the authenticity of the exhibits, and he is presumably in possession of the relevant agreements given that he references them in the Amended Complaint. (*See* ECF No. 13 ¶¶ 16–17, 19.)

employed John as a flight attendant assigned to the Philadelphia base at PHL. (*Id.* ¶¶ 6–7.) John, who is paid an "hourly wage"[3] and is classified as overtime-eligible, has occasionally worked more than forty hours per week. (*Id.* ¶¶ 8–9.) John asserts that American failed to pay him and other flight attendants regular or overtime wages for certain mandatory activities during weeks in which the sum of their paid and unpaid hours exceeded 40 hours. (*Id.* ¶ 34.) The mandatory activities for which John and similarly situated flight attendants were allegedly not paid are: time spent riding shuttles to and from hotels during stopovers within flight sequences ("Shuttle Bus Time"); the time between reporting to their job assignment and the flight departure time ("Pre-Departure Time"); time spent deplaning passengers upon arrival at the airport gate ("Deplaning Time"); and time spent boarding passengers prior to take-off ("Boarding Time") (collectively, the "Mandatory Activities"). (*Id.* ¶¶ 10–13.)

### B.    Procedural History

On October 9, 2025, John filed his initial complaint in the Philadelphia County Court of Common Pleas, alleging a putative class action for unpaid overtime wages under the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101, *et seq.* ("PMWA"). (ECF No. 1-1.) American removed the action to this Court on November 26, 2025. (ECF No. 1.) On December 10, 2025, American filed its initial motion to dismiss. (ECF No. 10.) On December 24, 2025, John filed his Amended Complaint (ECF No. 13), again bringing a single claim under the PMWA. After this Court denied American's initial motion to dismiss as moot (ECF No. 15.), American again moved to dismiss

---

[3] The Collective Bargaining Agreements ("CBAs") establish flight attendant pay per "credited hour," which does not necessarily correspond to each hour worked. Instead, credited hours are calculated via several different pay formulas, not all of which result in one credited hour of pay per hour of flight time. (*See* ECF No. 17-3 at 94–96; ECF No. 17-4 at 84–86.)

under Fed. R. Civ. P. 12(b)(6) or, alternatively, 12(b)(1). (ECF No. 17.) Following John's response (ECF No. 19) and American's reply thereto (ECF No. 20), the Motion is now ripe.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a complaint must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. at 678 (citation omitted). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

Applying the principles of *Iqbal* and *Twombly*, the Third Circuit has articulated a three-part analysis to determine whether a complaint will survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). This three-prong inquiry involves the following: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

A motion to dismiss pursuant to Rule 12(b)(1) requires a different analysis than a 12(b)(6) motion. In deciding a motion to dismiss under Rule 12(b)(1), the court must first determine whether the motion makes a facial or factual challenge to the court's subject matter jurisdiction. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). A facial challenge requires the court to consider the allegations in the complaint as true. *Id.* Similar to a Rule 12(b)(6) motion,

the court must "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* A court reviewing a factual challenge under Rule 12(b)(1) may consider facts outside the pleadings and "independently evaluate the evidence regarding disputes over jurisdictional facts." *Id.*; *CNA v. United States*, 535 F.3d 132, 140 (3d Cir. 2008).

### III. DISCUSSION

#### A. PMWA Claim

John brings a single claim under the PMWA for American's alleged failure to pay him and other class members overtime wages for hours worked during Shuttle Bus Time, Pre-Departure Time, Deplaning Time, and Boarding Time.

American argues that the PMWA claim is preempted by the PMWA's Air Carrier Exemption because John and other American flight attendants belong to the Association of Professional Flight Attendants ("APFA"), and their wage structure is therefore determined by the collective bargaining agreements ("CBAs")[4] negotiated by their union. (ECF No. 17-1 at 5.) In the alternative, American contends that the Court lacks subject matter jurisdiction given preemption provisions in the Railway Labor Act, 45 U.S.C. § 181 *et seq.* ("RLA").[5] (*Id.* at 6.)

The PMWA requires employers to pay employees wages for "all hours worked," including overtime pay at a rate of at least time and a half for hours worked in excess of 40 hours per week. 43 Pa. Stat. § 333.104(a), (c). As codified by regulation, "hours worked" includes the following:

---

[4] The relevant CBAs in this action are the CBA effective from December 13, 2014 to September 11, 2024 (the "2014 CBA") (ECF No. 17-4) and the CBA effective from September 12, 2024 to September 11, 2029 (the "2024 CBA") (ECF No. 17-3).

[5] The assessment of the Motion to Dismiss pursuant to Rule 12(b)(6) would require the Court to, at a minimum, refer to the CBAs. Because of this, the Court first assesses whether John's claim must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) for requiring the Court to interpret the CBA in the manner preempted by the RLA.

> [T]ime during which an employee is required by the employer to be on the premises of the employer, to be on duty or to be at the prescribed work place, time spent in traveling as part of the duties of the employee during normal working hours and time during which an employee is employed or permitted to work; provided, however, that time allowed for meals shall be excluded unless the employee is required or permitted to work during that time, and provided further, that time spent on the premises of the employer for the convenience of the employee shall be excluded.

34 Pa. Code § 231.1(b). The PMWA contains an exemption from the overtime pay mandate for hours worked by an employee of an air carrier subject to Title II of the RLA, when "the required hours of work, wages and overtime compensation have been agreed to either in a collective bargaining agreement between the employer and labor organization representing employe[e]s for purposes of collective bargaining or pursuant to a voluntary agreement or understanding arrived at between the employer and employe[e]" (the "Airline Hours Exemption"). 43 Pa. Stat. § 333.105(b)(8)(ii).

The RLA, which was amended to cover the airline industry, establishes a mandatory arbitral mechanism for "minor disputes" in the labor context, which are those disputes that "gro[w] out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252–53 (1994). Minor disputes involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." *Id.* at 253. The RLA preempts state law only if a state law claim is "dependent on the interpretation of a CBA." *Id.* at 262; *see also Pennsylvania Fed'n of Bhd. of Maint. of Way Emps. v. Nat'l R.R. Passenger Corp. (AMTRAK)*, 989 F.2d 112, 115–16 (3d Cir. 1993) (explaining that courts are unable to resolve a dispute where resolution of the PMWA claims requires the court to "ascertain the meaning of the collective bargaining agreement"). "The mere assertion of an independent state-law claim does not enable a party to avoid arbitration otherwise compelled by the [RLA]." *Amtrak*, 989 F.2d at 115 (citation modified). To determine

5

whether a claim is preempted by the RLA, the court must first determine whether a particular right is grounded in the CBA, which entails considering whether the plaintiff seeks to vindicate a right or duty created within the CBA. *See Livadas v. Bradshaw*, 512 U.S. 107, 123–24 (1994); *Malone v. United Parcel Serv., Inc.*, No. CV 21-3643, 2023 WL 3362588, at *2 (E.D. Pa. May 9, 2023). If the answer is no, the court then considers whether litigating the state law claim would require the interpretation of the CBA. *Malone*, 2023 WL 3362588, at *2 (citing *Livadas*, 512 U.S. at 124).

Determining whether American has violated the PMWA would require the Court to first calculate John's "hours worked" as defined under the PMWA—that is, (1) all the time he was required by American to be at PHL, on duty, or at another prescribed location, (2) time he spent traveling as part of his duties during normal work hours, and (3) time during which he was employed or permitted to work. *AMTRAK*, 989 F.2d at 114. After determining hours worked, the Court would need to assess whether John was compensated for those hours as required under the PMWA. John and American appear to agree that he performed the mandatory activities he outlines in the Amended Complaint in the course of his employment. (ECF No. 13 ¶¶ 10–13; ECF No. 17-1 at 5–6.) However, they disagree about whether he was appropriately compensated for these activities. Under the terms of the CBA, John's pay is not determined on a straight hourly basis, i.e., he is not paid a set hourly wage for each temporal hour worked. Rather, the CBA establishes different pay formulas to calculate a flight attendant's "credited hours," and the flight attendant is paid an hourly rate *per credited hour*. (*See* ECF No. 17-3 at 14; ECF No. 17-4 at 15.) Thus, for the Court to determine whether John was properly compensated under the PMWA, it would need to assess John's pay per credited hour under the terms of the CBA.

John does not allege that American acted to avoid paying him or members of the putative class overtime wages at any specific point. Rather, John asserts that American's pay structure,

which is set forth in the CBAs, failed to provide payment for flight attendants' performance of the Mandatory Activities he describes. (ECF No. 13 ¶¶ 10–12 (asserting that "Defendant generally has not paid Plaintiff and other Flight Attendants for" shuttle bus time, pre-departure time, or deplaning time), ¶ 13 ("For much of the class period, Defendant did not pay Plaintiff and other Flight Attendants for boarding time.").) John bases his assertion that he was not paid for this time solely on the lack of explicit reference to "pre-departure time," "shuttle time," "deplaning time," and, until September 2024, "boarding time" in the CBAs. This is clear in John's acknowledgment that the 2024 CBA *does* establish a payment structure for boarding time. (*Id.* ¶ 19 (asserting that the Airline Hours Exemption does not apply to the time period prior to September 12, 2024 because before that "the CBA made no reference to the compensability of boarding time").) In contrast, American asserts that these Mandatory Activities have always been contemplated as part of flight attendants' duties during the "trip sequences" they are assigned to work. (ECF No. 17-1 at 9–10.) American maintains that flight attendants are paid for performing these tasks via one of the credited hours formulas set forth in the CBAs. (*Id.* at 10–14.)

The Court finds that John's state law claim under the PMWA is dependent on the interpretation of the CBA, and is therefore preempted by the RLA.[6] As explained above, American is exempt from the overtime pay mandate in the PMWA if the required hours of work, wages, and overtime have been agreed to in a CBA. Thus, to decide John's claim, the Court would need to interpret the terms of the CBA, specifically the sections regarding "Hours of Service" and "Compensation," to determine whether John's or American's assessment of the agreement terms is correct. (ECF No. 17-3 at 14–22, 94–102; ECF No. 17-4 at 15–22, 84–91.) If the required hours

---

[6] The parties agree that John seeks to vindicate rights created in the PMWA rather than a right grounded in or arising from the CBA. (ECF No. 19 at 14–15; ECF No. 20 at 11.) As such, the Court progresses to the second step of the inquiry outlined in *Livadas*, 512 U.S. 107, 123–25.

of work, wages, and overtime have been agreed to, as American suggests, John's PMWA claim is preempted under the Airline Hours Exemption. Furthermore, even if the terms are not preempted under the Airline Hours Exemption, in order for the Court to determine whether John and the putative class members were compensated in accordance with the provisions of the PMWA, the Court would then need to calculate their credited hours under the pay formulas, determine the applicable pay rates for those credited hours under the CBA (rates for guaranteed hours versus overtime hours), and compare their total pay to the appropriate rate for the number of guaranteed or overtime hours worked. This is precisely the kind of interpretation that the Court is barred from undertaking under the RLA. *See AMTRAK*, 989 F.2d at 115; *Adames v. Executive Airlines, Inc.*, 258 F.3d 7, 13 (1st Cir. 2001) (finding claim under Puerto Rico's overtime law preempted by the RLA where it would require the court to calculate Plaintiff's flight time and on-duty time for a given week and month, consult the CBA to determine base and overtime pay, and then ascertain effective hourly salaries).

In his Response to the Motion, John relies on several cases that are inapplicable on this issue. For example, in *Livadas*, the Supreme Court dealt with the violation of a California labor law that imposed a penalty on employers who failed to pay all wages due immediately upon an employee's discharge. 512 U.S. at 110. The Supreme Court found that a preemption provision in the Labor Management Relations Act that is analogous to the RLA provision at issue here did not bar the plaintiff's right to receive a penalty payment from her employer simply because the penalty was tied to her wages as established in the governing CBA. *Id.* at 124–25. In that case, there was no dispute about the amount of the penalty or any suggestion that the plaintiff's union had bargained away her rights under the state labor law. *Id.* at 125. Here, there is a dispute as to whether American and the APFA reached an agreement regarding payment for the mandatory activities

that is reflected in the CBAs and, by extension, whether John and the purported class were compensated for those activities via the credited hours formulas established in the CBAs. This is also not a case in which the CBA is referenced "solely to compute damages." *See Mack v. Six Flags Great Adventure, LLC*, No. CV233813, 2024 WL 69879, at *5 (D.N.J. Jan. 5, 2024). In fact, the CBAs must be interpreted for the baseline determination of whether John and the putative class were paid according to structures that accounted for the activities for which they now argue they are owed wages. Only then would the Court turn to the calculation of any damages for failure to pay proper overtime wages, if required.

John also cites *Alaska Airlines v. Shurke*, 898 F.3d 904, 927 (9th Cir. 2018), for the proposition that construction of the CBA is not required "if there is no disagreement about the meaning or application of any relevant CBA-covered terms of employment." But as noted above, there *is* a dispute about the meaning of the CBA terms as they relate to the activities for which flight attendants are compensated. This case differs in that regard from *Alaska Airlines*, in which the Ninth Circuit considered a clearly defined CBA policy barring employees from using scheduled vacation days for family medical reasons, and that policy was alleged to violate Washington state law. *Id.* at 914. Finally, the other cases that John cites involve causes of action of a different nature, such as claims for employment discrimination or failure to comply with state laws regarding the proper format of wage statements, which hardly require courts to interpret an employee plaintiff's CBA. *See Palova v. United Airlines, Inc.*, 139 F.4th 458 (5th Cir. 2025) (finding that the RLA did not preempt plaintiff's age discrimination claim); *Ward v. United Airlines, Inc.*, 986 F.3d 1234 (9th Cir. 2021) (finding no preemption of claims regarding failure to satisfy California law requiring that employee wage statements contain certain information);

9

*Kovacic-Engelking v. Alaska Airlines, Inc.*, No. 217CV08147, 2018 WL 6164743 (C.D. Cal. Jan. 18, 2018) (finding no need to interpret CBA to decide disability discrimination claim).

Given the above, the Court finds Plaintiff's PMWA claim preempted by the RLA.

## IV.    CONCLUSION

For the foregoing reasons, the Motion is granted pursuant to Rule 12(b)(1).[7] An appropriate Order follows.

**BY THE COURT:**

**/s/ Kelley B. Hodge**

**HODGE, KELLEY B., J.**

---

[7] Because the Court grants the Motion pursuant to Rule 12(b)(1), it need not, and therefore, does not address American's alternative argument under Rule 12(b)(6) that John's claim is preempted by the Airline Hours Exemption.